UNITED STATES of America, Appellee,

v.

Elmer MIMS, Appellant.

UNITED STATES of America, Appellee,

v.

Franklin Michael EINFELDT, Appellant.

UNITED STATES of America, Appellee,

v.

LE MINH THANH, Appellant.

UNITED STATES of America, Appellee,

v.

Roger W. TECHAU, Appellant.

UNITED STATES of America, Appellee,

v.

Burdell DOOLIN, Appellant.

Nos. 85–2214, 85–2215, 85–2216, 85–2222 and 85–2240.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1986.

Decided March 3, 1987.

Joseph C. Johnston, Iowa City, Iowa, for appellant Techau.

Mark H. Retting, Cedar Rapids, Iowa, for appellant Le.

Larry Fugate, Iowa City, Iowa, for appellant Einfeldt.

Robert L. Teig, U.S. Atty., Cedar Rapids, Iowa, for appellee.

Before HEANEY and ROSS, Circuit Judges, and DUMBAULD,* Senior District Judge.

* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

ROSS, Circuit Judge.

Five defendants appeal their convictions of various offenses stemming from charges related to a heroin trafficking ring in Cedar Rapids, Iowa. The defendants were found guilty on the following counts: Techau, Le, Mims and Doolin—one count of conspiracy to import and distribute heroin in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A); Techau, Doolin and Mims—one count of possession of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2; Techau—one count of possession of heroin in violation of 21 U.S.C. § 844(a) and 18 U.S.C. § 2; Le and Mims—one count of knowingly and intentionally using a communication facility to facilitate a conspiracy to import and distribute heroin in violation of 21 U.S.C. §§ 843(b) and (c) and 18 U.S.C. § 2; and Einfeldt—four counts of knowingly and intentionally using a communication facility to facilitate the attempt to possess heroin with intent to distribute, in violation of 21 U.S.C. §§ 843(b) and (c) and 18 U.S.C. § 2.

The defendants raise several issues on appeal, the primary issues being: whether the district court[1] erred in denying Techau's motion to suppress evidence on the ground that the warrant for his arrest was without probable cause, and whether the district court erred in denying him a hearing on his motion to suppress; whether there was sufficient evidence to convict Le and whether the district court erred in denying his motion for severance; and whether there was sufficient evidence to convict Einfeldt. We reverse in part with regard to Einfeldt, and we affirm as to all others.[2]

**Background**

In June 1984, the Organized Crime Drug Task Force began an investigation seeking the source of large amounts of heroin which had been entering eastern Iowa. In-

formation gathered from court-authorized wiretaps of Thomas Sage,[3] the alleged ringleader of the conspiracy, and defendants Le and Mims led to the indictments and arrests of Sage, Le, Techau, Einfeldt, Mims and Doolin, among others. Other facts as are relevant to the individual defendants' claims will be set forth as necessary.

## I. Roger Techau

**A. Arrest Warrant.** In the course of the Task Force investigation, an arrest warrant was issued for defendant Techau. For reversal, Techau contends that the warrant for his arrest was issued without probable cause and that the district court erred in failing to suppress all the evidence derived therefrom, including the evidence derived from a subsequent search warrant.

The affidavit on which the arrest warrant was based was provided by F.B.I. Special Agent James Farrell Whalen and stated that in January 1985 Karl Harper Heppe was arrested in California and was interviewed concerning his involvement with heroin trafficking in Cedar Rapids, Iowa; Heppe identified his principal source of heroin as Thomas Sage, from whom Heppe had purchased heroin from May 1983 through August 1984; on March 9, 1985 Heppe went to Sage's residence wearing a body recorder provided by the F.B.I./D.E.A. and in the ensuing conversation Sage named several people, including Roger Techau, as being involved with Sage in the distribution of heroin; in the March 9 conversation, Sage also discussed his heroin contacts in Nepal; on March 26, 1985 Heppe again went to Sage's house wearing a body recorder, at which time Sage discussed his past heroin transactions involving several people, including Roger Techau; and on May 1, 1985 another task force officer, Sergeant Harry Beltzer, had a conversation with an individual named James

---

1. The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

2. Although filing briefs on appeal, counsel for Mims and Doolin subsequently informed this court in writing that there are no issues constituting reversible error with regard to those two defendants. After carefully considering their

briefs and reviewing the record, we agree that there was no reversible error with regard to Mims and Doolin, and we affirm their convictions.

3. Sage entered into a plea agreement and was a key government witness at trial.

David Gores in Red Wing, Minnesota, in which Gores stated that Sage and Sage's wife were involved in drug trafficking between Nepal and the United States.

Techau contends that the affidavit was insufficient to establish probable cause. Specifically, Techau contends that there were no facts set forth which the agents obtained through independent investigation of Techau, and that Sage's statements were unreliable as they were not against his penal interest.

The task of a magistrate in determining whether probable cause exists for issuing a warrant "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability" that the defendant has committed a crime. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In reviewing the magistrate's decision, this court simply must "ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Id.* at 238–39 (quoting *Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)). Great deference is afforded the magistrate's determination of probable cause. *United States v. Arenal,* 768 F.2d 263, 266 (8th Cir.1985).

■ We determine that the magistrate had a substantial basis for finding probable cause. The affidavit stated that on more than one occasion, Sage, a known heroin trafficker, named Techau as an individual with whom Sage had engaged in drug trafficking. The reliability of Sage's statements is established by the fact that the basis for Sage's knowledge was his own first-hand involvement in the drug trafficking ring. Further reliability is provided by Sage's statements being against his penal interest. *See United States v. Hunley,* 567 F.2d 822, 825 (8th Cir.1977); *United States v. Gavic,* 520 F.2d 1346, 1351 (8th Cir.1975). We reject Techau's contention that a statement must be made to a police officer to be against one's penal interest. *See Gavic, supra,* 520 F.2d at 1350–51 (statement

made to informant held to be against penal interest).

Also, Sage's statements regarding his involvement with others in drug trafficking are corroborated on the face of the affidavit by Heppe's statements that he had previously had several heroin transactions with Sage, and James Gores' statements that Sage was involved in heroin trafficking between the United States and Nepal. Thus, although the agents had not obtained corroboration of details regarding Techau in particular, they had corroborated Sage's statements involving himself in drug trafficking. "The theory connecting reliability and corroboration is that an informant [in this case Sage] who is correct about some things more likely will be correct about critical unverified facts * * *." *United States v. Reivich,* 793 F.2d 957, 960 (8th Cir.1986) (citing *Spinelli v. United States,* 393 U.S. 410, 427, 89 S.Ct. 584, 594, 21 L.Ed.2d 637 (1969) (White, J. concurring)). Therefore, we determine that the facts set forth in the affidavit provided the magistrate with a substantial basis for determining that probable cause existed to arrest Techau.

■ However, even if the affidavit was not sufficient to establish probable cause, we find that the evidence obtained from the search incident to Techau's arrest was still admissible because the officers executing the warrant were objectively reasonable in relying on it. *See United States v. Leon,* 468 U.S. 897, 919–23, 104 S.Ct. 3405, 3419–21, 82 L.Ed.2d 677 (1984); *United States v. Sager,* 743 F.2d 1261, 1262 (8th Cir.1984), *cert. denied,* 469 U.S. 1217, 105 S.Ct. 1196, 84 L.Ed.2d 341 (1985). In *Leon,* the Supreme Court held that the exclusionary rule does not bar the admission of evidence obtained by an officer acting with objective reasonable reliance on a warrant issued by a neutral and detached magistrate, even if the warrant is later held to be invalid. 468 U.S. at 919–23, 104 S.Ct. at 3419–21. The *Leon* Court went on to list certain exceptional situations where this rule would not apply: 1) where the issuing magistrate was misled by information in the affidavit that the affiant knew or should have known was

false; 2) where the magistrate wholly abandoned his judicial role and served merely as a rubber stamp for police; 3) where the affidavit so lacked probable cause as to render official belief in its validity unreasonable; and 4) where the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Id.* at 923, 104 S.Ct. at. 3421.

We find no such exceptional circumstances to exist in this case. Techau does not allege that Agent Whalen made deliberate falsehoods or acted with reckless disregard for the truth in preparing the affidavit. *See Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978). Nor is there any evidence that the magistrate abandoned his judicial role in issuing the warrant. It cannot be argued that the affidavit so lacked probable cause so as to render official belief in its validity unreasonable, as both the magistrate and district court found that the affidavit established probable cause. *See United States v. Strand,* 761 F.2d 449, 458 (8th Cir.1985) (Bowman, J., dissenting in part). Finally, there is nothing to indicate that the warrant was so facially deficient that the executing officers were unreasonable in relying on it. Therefore, we determine that the district court properly admitted the evidence seized incident to Techau's arrest.

**B. Evidence Seized Pursuant to Search Warrant.** Following Techau's arrest, a search warrant was issued for his trailer. The affidavit in support of the warrant listed items seized from Techau's trailer at the time of his arrest, and the affiant F.B.I. agent stated he had cause to believe there was further contraband in the trailer. The items seized incident to Techau's arrest were: a mobile police scanner; two papers containing police radio frequencies which appeared to have been updated to reflect current frequencies; rolling papers; and an unopened black can six inches by two inches which the affiant believed to contain narcotics. The affiant further stated that while handcuffing Techau, he had noticed a puncture mark on Techau's wrist which appeared to be a drug injection mark.

Techau asserts that the affidavit setting forth the above items, in addition to the affidavit in support of the previous arrest warrant, were together insufficient to lead a reasonably prudent person to believe that there was a fair probability that evidence of a crime or contraband would be found in his trailer. Techau contends that the items seized incident to his arrest were innocent appearing and consistent with non-criminal behavior.

■ Issuance of a search warrant is proper if, based on a common-sense consideration of all the surrounding circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates, supra,* 462 U.S. at 238, 103 S.Ct. at 2332; *United States v. Rich,* 795 F.2d 680, 682 (8th Cir.1986). Looking at all the circumstances set forth in the affidavits in this case, we conclude that there was a substantial basis for the magistrate to believe that more evidence of drug transactions would be found in Techau's trailer.

**C. Hearing on Motion to Suppress.** Techau further argues that the district court erred in denying him a hearing on his motion to suppress all evidence seized pursuant to his arrest and the subsequent search of his trailer. In his motion to suppress, Techau set forth three reasons indicating why an evidentiary hearing was necessary: 1) he had not been provided with any information in discovery from which he could determine whether any telephonic conversations intercepted by the government which implicated him were in compliance with 18 U.S.C. §§ 2510 *et seq.;* 2) in the affidavit in support of the arrest warrant for Techau, Agent Whalen had misrepresented the content of the recorded conversations between Sage and Heppe regarding Techau's involvement in drug transactions; and 3) there was no probable cause for either the arrest warrant or search warrant.

■ When a motion to suppress is filed, " '[e]videntiary hearings need not be set as a matter of course, but if the moving papers are sufficiently definite, specific, de-

tailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question, an evidentiary hearing is required.'" *United States v. Losing,* 539 F.2d 1174, 1177 (8th Cir.1976) (quoting *United States v. Ledesma,* 499 F.2d 36, 39 (9th Cir.), *cert. denied,* 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974)). A hearing is also unnecessary if it can be determined that suppression is improper as a matter of law. *Id.* at 1178.

■ In asserting the necessity of an evidentiary hearing, Techau first contends that he had no information whether any telephonic interceptions were legally accomplished. In his brief, Techau admits the allegation is vague. Techau fails to assert what may have been improper about the interceptions, or in fact, even what interceptions he is concerned with. Therefore, this allegation is insufficient to warrant an evidentiary hearing. *Cf. Losing, supra,* 539 F.2d at 1178 n. 5, 1179–80 (finding an evidentiary hearing necessary where defendants specifically alleged that wiretapping agents failed to both minimize interceptions and record all monitored calls).

■ Second, Techau claims that Whalen misrepresented the content of the conversations between Heppe and Sage. In *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 2684, 57 L.Ed.2d 667 (1978), the Supreme Court stated:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.

Techau's allegation that Whalen misrepresented the true nature of the recorded conversations does not rise to the level of "deliberate falsehood" or "reckless disregard for the truth" as required by *Franks.*

Finally, Techau alleges that there was not probable cause for either the arrest warrant or the search warrant. In his brief, Techau concedes that no evidentiary hearing for either warrant is necessary if the magistrate considered only evidence within the four corners of the affidavit in making a probable cause determination. However, he contends an evidentiary hearing was necessary to determine if the magistrate considered evidence outside of the affidavits. There is no indication that the magistrate considered any other evidence outside the affidavits, and Techau's allegations are vague. Further, we have already considered the probable cause issues. Therefore, we determine that Techau's argument is without merit.

## II. Le Minh Thanh

■ **A. Sufficiency of the Evidence.** Le was convicted of one count of conspiracy to import and distribute heroin and one count of use of a telephone to facilitate the conspiracy. Le argues that the district court erred in failing to grant his motion for acquittal because there was insufficient evidence that he was a knowing, voluntary and willing member of the conspiracy with the requisite intent to commit the offenses for which he was convicted. Le's primary contention is that he was duped by Sage.

It is established in this circuit that "[t]o convict a defendant of criminal conspiracy, the government is obligated to prove that 'the individual entered an agreement with at least one other person, that the agreement had as its objective a violation of the law, and that one of those in agreement committed an act in furtherance of the objective.'" *United States v. Michaels,* 726 F.2d 1307, 1310–11 (8th Cir.) (quoting *United States v. Evans,* 697 F.2d 240, 244–45 (8th Cir.), *cert. denied,* 460 U.S. 1086, 103 S.Ct. 1779, 76 L.Ed.2d 350 (1983)), *cert. denied,* 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984). "[I]t is not necessary to prove that the defendant knew all of the conspirators or was aware of all the de-

tails, but it must be shown that the person 'knowingly contributed ... efforts in furtherance of it.' " *United States v. Jones*, 545 F.2d 1112, 1115 (8th Cir.1976), (citation omitted), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977). Once a conspiracy is established, even slight evidence connecting the defendant to the conspiracy may be sufficient proof of his involvement. *Michaels, supra*, 726 F.2d at 1311 (citing *United States v. Overshon*, 494 F.2d 894, 896 (8th Cir.), *cert. denied*, 419 U.S. 853, 95 S.Ct. 96, 42 L.Ed.2d 85 (1974)).

In reviewing the sufficiency of the evidence underlying the jury verdict, this court must view the evidence in the light most favorable to the verdict, accepting as established all reasonable inferences which tend to support it. *United States v. Sopczak*, 742 F.2d 1119, 1121 (8th Cir. 1984).

▮ In this case we determine that the record establishes that there was sufficient evidence from which the jury could have found beyond a reasonable doubt that Le was a knowing participant in the conspiracy.

The evidence presented at trial included testimony by Sage that he began storing heroin at Le's house in October 1984. Although Le was not initially told what was in the package, he was told some three days later. After that, Sage testified that Le would make deliveries of heroin for him, knowing what was in the packages, and received a commission for such. Le also took heroin orders for Sage and collected money which he wired to foreign accounts.

▮ Also admitted into evidence were tapes of phone conversations between Sage and Le. In one tape, a discussion took place concerning the amounts of money owed on Le's account by Burdell Doolin and Pete Telenson (who had been named in the indictment as a co-defendant). In another tape, Le asked Sage "Does the man come yet." Sage testified that Le was referring to a heroin courier.

There was testimony that Le was familiar with heroin from his experiences while living in Vietnam. Le's American sponsor testified that she told him not to get involved in drugs.

Mary Ann Caldwell, who was also named as a co-defendant in the indictment, testified that Le accompanied Sage in December 1984 when Sage delivered heroin to her. Further, Le was present while Caldwell weighed the heroin on that day. In January and February 1985, Le went to Caldwell's house several times to collect money for Sage.

Pete Telenson testified that in December 1984 Sage and Le delivered heroin to Telenson's house, and that Le came back several times to collect money.

Viewing the evidence in the light most favorable to the government, we conclude that there was sufficient evidence for the jury to find that Le was a knowing member of the conspiracy to import and distribute heroin.[4]

**B. Severance.** Le unsuccessfully filed a motion for severance with the trial court. Le argues that this motion was improperly denied because his defense, that he was an unwitting and unknowing participant in the transactions, was antagonistic to that of the other defendants. Le also asserts that because of the complexities of the case, the jury was unable to focus on the issues affecting him, and that he was "thus sub-

---

4. Le had also contended that because there was insufficient evidence to establish that he was a knowing member of the conspiracy, the district court erred in admitting under *United States v. Bell*, 573 F.2d 1040 (8th Cir.1978) certain exhibits and out-of-court statements of Le's alleged co-conspirators. In *Bell*, this court determined that the out-of-court statements of co-conspirators are admissible against a defendant as long as the government shows by independent evidence that: 1) a conspiracy existed; 2) the declarant and defendant were members of the conspiracy; and 3) the declaration was made during the course of and in the furtherance of the conspiracy. *Id.* at 1043–44. Le argued that because he was not a knowing member of the conspiracy, the court erred in overruling his motion to strike/motion for *Bell* determinations. Our discussion of this issue is precluded by our finding that there was sufficient independent evidence for the jury to find that Le was a knowing member of the conspiracy.

jected to the spector of guilt by association."

The general rule in this circuit is that "persons charged in a conspiracy should be tried together, especially where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Arenal,* 768 F.2d 263, 267 (8th Cir.1985). A denial of severance will not be reversed unless clear prejudice and an abuse of discretion are shown. *United States v. Lee,* 743 F.2d 1240, 1248 (8th Cir.1984). A defendant must show more than that his strategy was antagonistic to that of the other co-defendants to show an abuse of discretion. *United States v. Miller,* 725 F.2d 462, 468 (8th Cir.1984). He must show that the proof was such that the jury " 'could not be expected to compartmentalize the evidence as it relates to separate defendants.' " *Id.* (citation omitted).

We conclude that Le was unable to show an abuse of discretion in the district court's refusal to grant Le's motion for severance. Much of the proof relevant to the charges against one defendant was interwoven with proof relevant to another defendant. *See United States v. Garcia,* 785 F.2d 214, 220 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986). However, the evidence in this case was not difficult to compartmentalize, and there is no indication that the jury was confused. Le further offers no evidence of clear prejudice, such as, for example, asserting that a co-defendant would have offered exculpatory evidence on his behalf if there were separate trials. *See United States v. Arenal, supra,* 768 F.2d at 268. Therefore, we conclude the district court did not err in refusing to grant Le's motion for severance.

### III. Franklin Michael Einfeldt.

Franklin Michael Einfeldt appeals his conviction of four counts of knowingly and

intentionally using a communication facility (a telephone) to facilitate an attempt to possess heroin with intent to distribute. Each count arose from a separate telephone conversation with Thomas Sage.[5] On appeal, Einfeldt challenges the sufficiency of the evidence supporting each count.

Count 6 stemmed from a phone conversation between Einfeldt and Sage on the morning of March 23, 1985. Einfeldt told Sage that he would like to meet with Sage to discuss Einfeldt's paying of a debt owed to Sage by Burdell Doolin. The two set up a meeting place and the conversation ended.[6]

Count 7 stemmed from a phone conversation the afternoon of March 23, 1985 in which Einfeldt told Sage that he would pay off Doolin's debt if Sage would work with him. Sage told him that he would let Einfeldt know when he was looking for a buyer. Einfeldt said he could come up with three to five hundred dollars, but that he could not afford to deal on a quantity basis. The phone call ended with no agreement reached.

The third count on which Einfeldt was convicted, count 9, arose from two phone conversations Einfeldt had with Sage on March 26, 1985. In the first call, Einfeldt asked for the price of "a man" and Sage said "10 down." [7] Einfeldt said that he would see what he could come up with and then call Sage back. Later that day, Einfeldt called Sage and offered him six or seven hundred dollars, which Sage declined.

In the conversation serving as the basis for the fourth count, count 11, Einfeldt called and told Sage he had $1,500. Sage indicated that was not enough, and ended the conversation saying that he was not interested in dealing with Einfeldt.

---

5. Actually, count 9 arose from two conversations between Sage and Einfeldt on March 26, 1985. However, the parties have treated these two conversations together.

6. Apparently this meeting never took place. In their next phone conversation on March 23,

Einfeldt asked Sage what happened to him, and Sage replied that he "got tied up."

7. Sage testified at trial that "a man" meant a courier in possession of 200 grams of heroin, and the cost for 200 grams delivered was $10,-000.

■ The elements of proof of a § 843(b) telephone count are: 1) knowing or intentional 2) use of a telephone 3) to facilitate the commission of a drug offense. *United States v. Ward,* 696 F.2d 1315, 1319 (11th Cir.), *cert. denied,* 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983); *United States v. Rey,* 641 F.2d 222, 224 n. 6 (5th Cir.), *cert. denied,* 454 U.S. 861, 102 S.Ct. 318, 70 L.Ed.2d 160 (1981); *United States v. Russo,* 796 F.2d 1443, 1463–64 (11th Cir.1986). Proof of the underlying offense (in this case, attempt) must be shown by a preponderance of the evidence. *Rey, supra,* 641 F.2d at 224 n. 6; *Russo, supra,* 796 F.2d 1463–64. *See also United States v. Pierorazio,* 578 F.2d 48, 51 (3rd Cir.), *cert. denied,* 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 652 (1978).[8] As noted previously, when considering the sufficiency of the evidence underlying a jury verdict, this court must view the evidence in the light most favorable to the verdict. *United States v. Sopczak,* 742 F.2d 1119, 1121 (8th Cir. 1984).

■ Einfeldt argues that his acts were insufficient to constitute an attempt. The necessary elements of an attempt are "(1) an intent to engage in criminal conduct, and (2) conduct constituting a 'substantial step' towards the commission of the substantive offense which strongly corroborates the actor's criminal intent." *United States v. Joyce,* 693 F.2d 838, 841 (8th Cir.1982) (citations omitted).

■ The parties do not dispute Einfeldt's intent; the only disputed issue is whether Einfeldt's conduct constituted a "substantial step."

"A substantial step must be something more than mere preparation, yet may be less than the last act necessary before the actual commission of the substantive crime.... In order for behavior to be punishable as an attempt, it need not be incompatible with innocence, yet it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in con-

text could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to violate the statute."

*United States v. Mazzella,* 768 F.2d 235, 240 (8th Cir.) (quoting *United States v. Manley,* 632 F.2d 978, 987–88 (2d Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981)), *cert. denied,* 106 S.Ct. 528, 88 L.Ed.2d 460 (1985). Whether a defendant's conduct constitutes a substantial step depends on the particular circumstances of the case. *Joyce, supra,* 693 F.2d at 841; *Mazzella, supra,* 768 F.2d at 240.

Einfeldt bases his argument that his conduct did not constitute a substantial step primarily on *Joyce, supra.* In that case, Joyce was contacted several times by a government informant who told Joyce that cocaine was available in St. Louis. After the third call, during which a tentative price was discussed, Joyce flew from Oklahoma City to St. Louis to meet with the informant and an undercover police officer, who was posing as a cocaine seller. The parties agreed on a price, but Joyce refused to tender the money until the police officer opened the package which allegedly contained cocaine. The police officer refused to open the package, and finally Joyce left without making the purchase. He was arrested and in his possession was the approximate amount of money which he had told the informant he would pay for the cocaine. Joyce was convicted of one count of attempting to possess cocaine with intent to distribute.

On appeal, this court reversed, finding that Joyce's acts had not constituted a substantial step. In reaching this conclusion, however, we emphasized that it was Joyce who had ended the negotiations:

Whatever intention Joyce had to procure cocaine was abandoned prior to the commission of a necessary and substantial step to effectuate the purchase of cocaine. The attempt, of course, need not be successful, but generally the abortion

---

8. We consider the evidence on each count in light of the parties' agreement at oral argument that the case was tried before the jury on the

theory that there was an alleged attempt to obtain heroin underlying each phone call, rather than there being just one overall attempt.

of the attempt occurs because of events beyond the control of the attemptor. As the court recognized in [*United States v. Monholland*, 607 F.2d 1311, 1319 (10th Cir.1979)], "the [attemptor's] act must have passed the preparation stage so that if it is not interrupted extraneously, it will result in a crime." Here it is undisputed that Joyce, despite having both the opportunity and ability to purchase the cocaine at the agreed upon price, unambiguously refused either to produce his money or to purchase the cocaine. This effectively negated the government's effort to consummate the sale.

693 F.2d at 841–42 (citations omitted).

Unlike *Joyce*, in the present case it was Sage, rather than Einfeldt, who ended the negotiations. It is clear from at least the last three phone conversations that Einfeldt had done all he could to obtain heroin short of getting Sage to agree to sell it to him. In each of these calls, Einfeldt contacted a known source of heroin and tried to negotiate a deal. Einfeldt repeatedly offered Sage definite sums of money in exchange for the heroin. He also indicated that he had secured increasingly larger sums of money to enable him to deal with Sage. It was only because Sage refused to deal with Einfeldt that Einfeldt was not successful in his endeavors. On that basis, this case is distinguishable from *Joyce*. It is our opinion that in the second through fourth phone calls Einfeldt's conduct constituted a substantial step. Einfeldt's acts passed the stage of mere preparation such that, but for Sage's refusal to deal, Einfeldt's acts would have resulted in a crime. *See also United States v. May*, 625 F.2d 186, 194 (8th Cir.1980) (sustaining conviction for attempt to conceal government documents where defendant asked another person to have the documents concealed, but the officer in charge of the documents refused to cooperate).

Einfeldt also relies on *United States v. Monholland*, 607 F.2d 1311 (10th Cir.1979) for support of his contention that his conduct was merely preparatory, rather than a substantial step. In *Monholland*, the defendants had been charged with attempt to receive in interstate commerce an explosive with knowledge that the explosive would be used to kill a state district judge. The Tenth Circuit stated that the only evidence relied on in support of the charge was a conversation between an undercover government agent and one of the two defendants, in which the defendant asked the agent what a box of caps and dynamiting cord cost. At the time, the defendant was viewing a stick of simulated dynamite which the agent had. A similar conversation was also had between the agent and the second defendant. The agent told the second defendant that he did not sell the dynamite, rather he did all the dynamiting work himself. *Id.* at 1317.

The court found that this conversation was simply a preliminary discussion which did not constitute an attempt, stating that this "mere abstract talk" was "a far cry" from the attempt to transport or receive in commerce an explosive with knowledge that it would be used to kill or destroy. *Id.* at 1317–18. The court acknowledged that " '[a] substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent.' " *Id.* at 1320 (quoting *United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975)). However, in the case before it, the court determined that the "general conversation" of the defendants was insufficient to be considered a substantial step as "[t]here is no act on the part of the defendants that can be regarded as directly aimed toward the commission of the offense and which is proximate and germane thereto." *Id.*

■ In contrast, in the present case we have more than "general conversation" or "mere abstract talk." Einfeldt repeatedly contacted Sage and offered definite sums of money for some quantity of heroin. He further indicated that he had taken action to secure the money. Einfeldt's acts were directly aimed at the commission of the offense of attempting to possess heroin. We think that a reasonable observer would conclude that Einfeldt's acts in making the

last three calls to Sage were undertaken in accordance with a design to possess heroin, *see Mazzella, supra,* 768 F.2d at 240, and were strongly corroborative of the firmness of his intent. *See United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir. 1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

Having found that Einfeldt's conduct amounted to substantial steps in the last three phone calls, and that his intent was to possess heroin, we determine that there was sufficient evidence that Einfeldt committed the underlying offense of attempt to possess heroin. Clearly, Einfeldt's use of the telephone facilitated his attempts. Therefore, we affirm Einfeldt's convictions on counts 7, 9 and 11.

We agree with Einfeldt, however, that the first call did not constitute a substantial step. In that call, Einfeldt simply asked for a meeting with Sage. There were no discussions as to price or quantity, nor was heroin mentioned in any way except for Einfeldt's statement that he wanted to take care of Burdell Doolin's debt with Sage (Doolin's debt being a drug debt). It cannot be said that Einfeldt's conduct in this first call passed a stage of mere preparation, so that if not interrupted extraneously it would have resulted in a crime. Therefore, we reverse Einfeldt's conviction on count 6.[9]

## IV. CONCLUSION

For the reasons stated above, we affirm the convictions of Techau, Le, Mims and Doolin. We reverse Einfeldt's conviction on count 6, but affirm as to the other counts. Einfeldt was sentenced to four years imprisonment on each of counts 6, 7 and 9, and three years imprisonment on count 11, with the sentences to run consecutively to each other for a total of fifteen years. We remand this case to the district court for entry of a corrected judgment consistent with this opinion.

**9.** Techau, Le and Einfeldt raise several other issues on appeal. After carefully considering

the briefs and the record, we determine that these issues are without merit.