[Cite as *State v. Rykena*, 2025-Ohio-5136.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 114702 |
| v. | : | |
| DANIEL RYKENA, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 13, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-692104-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alaina Hagans and Christine M. Vacha, Assistant Prosecuting Attorneys, *for appellee.*

Goldberg Dowell and Associates LLC and Adam Parker, *for appellant.*

DEENA R. CALABRESE, J.:

{¶ 1} Defendant-appellant Daniel Rykena ("Rykena") appeals the trial court's denial of his motion to suppress 12 images containing child pornography that Rykena uploaded to Snapchat. For the reasons stated below, we find that the trial

court did not err when it found that Snapchat is not a state actor and that Rykena did not have an expectation of privacy in the 12 images he uploaded to the platform. Therefore, we affirm the trial court's decision denying Rykena's motion to suppress evidence.

## I. Relevant Facts and Procedural History

{¶ 2} This appeal stems from the trial court's denial of Rykena's motion to suppress evidence provided by Snapchat to the National Center for Missing and Exploited Children ("NCMEC"), who then provided it to law enforcement. As described in more detail below, Rykena uploaded 12 images to the Snapchat application. Snapchat reviewed the images and determined Rykena was "engag[ing] in activity relating to online child exploitation" then reported the offense to NCMEC. NCMEC then forwarded the images to the Internet Crimes Against Children Task Force ("ICAC") with the Cuyahoga County Prosecutor's Office, who used them to secure a subpoena and two search warrants.

### A. Indictment

{¶ 3} On May 21, 2024, Rykena was indicted by a Cuyahoga County Grand Jury on 29 counts of pandering sexually oriented matter involving a minor or impaired person in violation of R.C. 2907.322(A)(1), and four counts of illegal use of a minor or impaired person in nudity-oriented material or performance in violation of R.C. 2907.323(A)(1). All 33 charges are felonies of the second degree.

{¶ 4} On June 20, 2024, Rykena filed a motion to suppress seeking suppression of all information obtained by the State, both information received from

third parties and information later seized during the execution of search warrants. The motion argued, in relevant part, that Snapchat and NCMEC are state actors.

{¶ 5} On July 22, 2024, the trial court held a hearing on Rykena's motion to suppress. The testimony at the hearing was as follows.

### B. Stephen Dufresne

{¶ 6} Stephen Dufresne ("Dufresne") testified that he is employed as a law enforcement outreach lead at Snap, Inc., the parent company of Snapchat. He described Snapchat as "a communications application where users can communicate, exchange photos and videos and text communications." He stated that Snapchat maintained community guidelines for the safety of their community, for the protection of the brand and company, and to prevent illegal content such as images on their platform. Snapchat learns of illegal images uploaded to its platform either by reporting from third parties or when the images are detected by Snapchat's proactive detection software, i.e., hash matching. He did not know how Snapchat learned of the 12 images Rykena uploaded to the platform. (July 22, 2024 tr. 73-88.)

### C. Susan Lafontant

{¶ 7} Susan Lafontant ("Lafontant") testified that she is a record specialist for the exploited children's division of NCMEC. Through its CyberTipline, NCMEC receives tips regarding child exploitation from the public or electronic service providers ("ESP") such as Facebook, Snapchat, Instagram, or Google.

{¶ 8} Lafontant explained hash matching. She explained that "every video or file has what is known as a hash, which is a unique digital fingerprint[,] an alphanumeric sequence. This is unique to every single image and video similar to how every human has a unique fingerprint. [NCMEC is] able then to match the images in this report in [their] system[.]" The State described a hash match in simpler terms, explaining that the images "went through [NCMEC's] automated system and dinged as an image that is known to [NCMEC] to be apparent child pornography." (July 22, 2024 tr. 103.)

{¶ 9} On October 15, 2021, NCMEC first became involved with this case when it received a CyberTipline report from Snapchat of apparent child pornography. Twelve files were uploaded with the report. The report included hash-matching data for each of the images, meaning each of the images' numeric sequences was determined to match with images that were previously determined to contain child pornography, and indicated that the images underwent independent review at Snapchat. The report also provided an incident time of October 14, 2021, a phone number, date of birth, email address, screen name, and IP address associated with the user. The report categorized the images as "a prepubescent child engaged in a sex act."

{¶ 10} NCMEC conducted their own investigation. NCMEC personnel did not independently determine the images contained child pornography but did conduct hash matching. NCMEC searched the IP address and phone number in publicly available open-source databases to find the location where they were

resolving. That search revealed a possible location of Cleveland, Ohio and Cox Communication. The information from Snapchat and NCMEC was then made available on a database to law enforcement, in this case the Cuyahoga County Prosecutor's Office Ohio ICAC. (July 22, 2024 tr. 89-127.)

**D. Marisa Pawlowski**

{¶ 11} Marisa Pawlowski ("Pawlowski") testified that she is a special investigator for the Ohio ICAC task force with the Cuyahoga County Prosecutor's Office. In the course of her employment, she received a CyberTipline report from NCMEC in October 2021. The tip included 12 files that Pawlowski viewed and identified as containing child exploitation material. The tip also included identifiers such as an IP address, phone number, date of birth, and email address for a Snapchat account with the username "glacialphantom."

{¶ 12} Pawlowski used the information provided by NCMEC to obtain additional information. First, Pawlowski sent a subpoena to Cox Communications and, as a result, learned that the IP address belonged to Rykena in Parma, Ohio. Pawlowski also sent a content warrant to Snapchat to obtain information regarding the account. Lastly, she obtained a search warrant authorizing law enforcement to search Rykena's residence for electronic devices. The execution of the residential search warrant resulted in the seizure of child sexual abuse material. (July 22, 2024 tr. 53-72.)

{¶ 13} On July 31, 2024, the trial court denied Rykena's motion to suppress. The court stated the following:

The Fourth Amendment of the United States Constitution protects individuals from unreasonable search and seizures and requires warrants to be issued upon probable cause.

Additionally, when we introduce social media, we explore the individual's expectation of privacy as well.

Defendant has asked the Court to review the issue in the context as outlined below: Is the social media platform Snapchat a state actor, whether NCMEC, The National Center for Missing and Exploited Children, is a state actor, and did ICAC, Internet Crimes Against Children, investigate or issue valid subpoenas and search warrants.

Snapchat. Testimony was heard from the Snapchat Incorporated representative Steven Dufresne, D-u-f-r-e-s-n-e, and Stephen is S-t-e-p-h-e-n. Testimony received was that they're not law enforcement trained. We had a review of the terms and services of the community guidelines, Exhibits 5 and 6. Snapchat is a public platform.

Snapchat received the information and then forwarded it to NCMEC. Based on the information of what is rendered in the testimony, the Court finds Snapchat is not a state actor.

NCMEC. Testimony was received from NCMEC representative Susan Lafontant, L-a-f-o-n-t-a-n-t. Testimony was received that they are not law enforcement trained. She was the record specialist in the section for exploited children. NCMEC is a private, non-profit organization. They do receive funding from the government as well as private organizations. She was able to explain the process of receiving cyber tip information from platforms, the ESP or electronic service such as Snapchat. The files, and there were 12, were not reviewed by NCMEC.

Counsel made reference to a case United States of America versus Walter Ackerman, 831 F.3rd 1292, 1295 to 1308. That's a Tenth Circuit decision wherein counsel and Mr. Rykena indicated that NCMEC was found a state actor. The Court did review that case, and the Court finds that that case is not analogous to the case before the Court. The Court finds that NCMEC was not a state actor.

There was also some allegations regarding the hash matching that's done by AI. Counsel failed to provide information that reliance on AI is contrary to Ohio law.

This takes us to the review of the subpoena and the search warrants. Special Investigator Cuyahoga County Prosecutor's Office Internet Crimes Against Children Task Force Representative Pawlowski was rendered wherein she reviewed the process of obtaining the information from NCMEC, the process she went through with regards to requesting the subpoena and the subsequent search warrants.

There was an issue brought before the Court with regard to the subpoena, and counsel believed that it was overbroad, but this Court found that counsel failed to really support sufficiently as it relates to this case that issue with regards to being overbroad.

The next issue came about the search warrants. Counsel alleged improper procedures in obtaining search warrants. There were two search warrants. One was issued by [a trial court judge] and [a second trial court judge issued the other]. There was allegations again presented to this court with regards to how those search warrants were acquired. The Court did review the search warrants. There was no evidence given to this Court that there were improper procedures in obtaining the search warrants, so I didn't find anything to support the allegation.

. . .

The Court did review the subpoenas and the search warrant. They were Exhibits 2, 3 and 4, and in the Court's review of those documents, the Court did not find anything that's inappropriate and believes that the warrants were secured on probable cause.

The motion to suppress is therefore denied.

(July 31, 2024 tr. 152-157.)

{¶ 14} On October 31, 2024, Rykena entered a plea of no contest to the indictment and was found guilty as charged on all counts. The trial court referred Rykena for a presentence investigation. On December 4, 2024, a sentencing hearing was held and Rykena was sentenced to an aggregate of 8 to 12 years of imprisonment and was determined to be a tier II sex offender.

{¶ 15} Rykena appeals the trial court's denial of his motion to suppress, raising a single assignment of error for our review:

The trial court erred in denying [Rykena's] motion to suppress.

## II. Law and Analysis

{¶ 16} In his single assignment of error, Rykena argues that the trial court erred when it denied his motion to suppress. He specifically argues that Snapchat and NCMEC were government actors and as such conducted unlawful, warrantless searches.

{¶ 17} The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

{¶ 18} The Ohio Supreme Court has held that in felony cases, Ohio Const., art. I, § 14 provides the same protection as the U.S. Const., amend. IV. *See State v. Smith*, 2009-Ohio-6426, ¶ 10, fn. 1.

{¶ 19} Appellate review of a motion to suppress involves a "mixed question of law and fact." *State v. Burnside*, 2003-Ohio-5372, ¶ 8. The trial court is "in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). "[T]he appellate court must then independently determine, without deference to the conclusion of

the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

### A. Government Actors

{¶ 20} Rykena asserts that Snapchat and NCMEC were state actors who conducted unlawful, warrantless searches. Rykena's appeal does not dispute any actions taken by ICAC, only that their subsequent searches were "the fruit of the poisonous tree."

{¶ 21} The Fourth Amendment protects against unlawful governmental searches and seizures but is not a limitation on searches by private entities. *Burdeau v. McDowell,* 256 U.S. 465, 475 (1921). However, if a private entity acts as an agent or instrument of the government then the Fourth Amendment would apply. *Coolidge v. N.H.*, 403 U.S. 443, 487 (1971).

{¶ 22} Courts have determined that ESPs such as Snapchat are not state actors. In *State v. Ryan*, 2018-Ohio-4739, ¶ 16 (5th Dist.), the Fifth District determined that AOL was not a state actor when it flagged an email with attachments containing child pornography and reported the incident to NCMEC, even though AOL was mandated by federal law to report such images. The *Ryan* Court noted that federal courts have uniformly rejected arguments that courts should deem private entities to be state actors when they comply with mandatory reporting requirements imposed by federal laws or voluntarily scan for illegal images. *Id. See United States v. Miller*, 982 F.3d 412, 426 (6th Cir. 2020) ("Google's hash-value matching [] did not implicate the Fourth Amendment[]" when Google

sent a CyberTipline report of child pornography to NCMEC); *United States v. Guard*, 2025 U.S. App. LEXIS 23364, \*26 (2d Cir. 2025) (Kik not a state actor when it searched user's account for child pornography and provided the material it found in his accounts to NCMEC); *United States v. Rosenow*, 50 F.4th 715, 730-731 (9th Cir. 2022) (Dropbox not a state actor simply based on federal reporting obligations); *United States v. Ringland*, 966 F.3d 731, 736 (8th Cir. 2020) (Searches by Google are private despite requirement that it report child pornography to NCMEC); *United States v. Rosenschein*, 2020 U.S. Dist. LEXIS 211433, \*33-37 (D.N.M. Nov. 12, 2020) (Chatstep and Microsoft not state actors for Fourth Amendment purposes). Rykena has not presented any novel arguments that convince us to deviate from these persuasive cases.

{¶ 23} Rykena also contends that he has an expectation of privacy in the images he uploaded to Snapchat. The Supreme Court addressed searches by private parties in *United States v. Jacobsen*, 466 U.S. 109 (1984). In *Jacobsen*, employees of a private freight carrier were examining a damaged package. The manager cut open a silver tube inside the package and discovered a white powdery substance in the tube. The employees notified a federal agent, who then conducted chemical testing of the substance, which revealed that it was cocaine. *Id.* at 111. The *Jacobsen* Court determined that the initial search, i.e., the manager cutting open the silver tube inside the damaged package, did not violate the Fourth Amendment because it was performed by a private party. *Id.* at 115. When determining whether the federal

agent's chemical testing was a search, the court analyzed whether the scope of the agent's search was outside the scope of the private search.

{¶ 24} The *Jacobsen* Court found the following regarding the disclosure of private information to third parties and the scope of any subsequent government search:

> This standard follows from the analysis applicable when private parties reveal other kinds of private information to the authorities. *It is well-settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information. Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information.* "This Court has held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in a third person will not be betrayed." *U.S. v. Miller*, 425 U.S. 435, 443 (1976). The Fourth Amendment is implicated only if the authorities use information with respect to which the expectation of privacy has not already been frustrated.

(Emphasis added.) *Jacobsen* at 117.

{¶ 25} In this case, Rykena argues that he had an expectation of privacy in the 12 images he uploaded to Snapchat. However, when he revealed those images to Snapchat, a third party, his expectation of privacy in those images was frustrated pursuant to *Jacobsen*.

{¶ 26} Rykena also contends that NCMEC conducted an unlawful warrantless search and/or was a government actor. However, we find that any search conducted by NCMEC was within the scope of Snapchat's search. "Under the

private-search doctrine, the government does not conduct a Fourth Amendment search when there is a 'virtual certainty' that its search will disclose nothing more than what a private party's earlier search has revealed." *United States v. Miller*, 982 F.3d 412, 417-418 (6th Cir. 2020), quoting *Jacobsen*, 466 U.S. at 119 (1984). As discussed above, Snapchat conducted hash matching and independent verification of the 12 images uploaded to their platform. NCMEC conducted hash-matching analyses of the same images but no independent verification. The only additional search conducted by NCMEC involved a search of the IP address and phone number provided by Snapchat in publicly available open-source databases. "In order to have standing to challenge a search or seizure, the defendant must have a reasonable expectation of privacy in the evidence seized." *State v. Jackson*, 2004-Ohio-3206, ¶ 8, citing *Alderman v. United States*, 394 U.S. 165, 171-172 (1969). Rykena does not dispute that he did not have an expectation of privacy in the publicly available information NCMEC's uncovered. We find that none of NCMEC's actions amount to a search that exceeded the scope of Snapchat's search and thus there was no infringement of Rykena's Fourth Amendment rights. Therefore, we need not address whether NCMEC was a government actor.

{¶ 27} We find that Snapchat is a private entity and thus did not conduct an unlawful, warrantless search of images that Rykena uploaded to the platform. We also find that NCMEC's search was within the scope of any search conducted by Snapchat and, thus, was not an unlawful, warrantless search. Rykena does not

dispute any subsequent searches conducted by ICAC. Therefore, Rykena's sole assignment of error is overruled.

{¶ 28} We affirm the trial court's decision denying Rykena's motion to suppress evidence.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
DEENA R. CALABRESE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR